**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Metcalf,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-20-08175-PCT-JJT<br><br>**ORDER** |

Plaintiff Justin Lee Metcalf challenges the denial of his Application for Supplemental Security Income benefits under the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial (Doc. 1), and the Court now addresses Plaintiff's Opening Brief (Doc. 18, Pl. Br.), Defendant's Response Brief (Doc. 19, Def. Br.), and Plaintiff's Reply (Doc. 20, Reply). The Court has reviewed the briefs and Administrative Record. (Doc. 15, AR.) The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

**I.     PROCEDURAL HISTORY**

Plaintiff completed an application for Supplemental Security Income benefits in January 2017 alleging disability beginning March 1, 2016. (AR. at 180-89.) The Social Security Administration ("SSA") denied Plaintiff's claim at the initial and reconsideration levels of administrative review. (AR. at 113-16, 118-21.) Plaintiff timely requested an

administrative hearing. (AR. at 123-24.) ALJ Matthew Dawson conducted a hearing on June 7, 2019. (AR. at 20-56.) At that hearing, Plaintiff testified under examination by his attorney and the ALJ. (AR. at 23-45.) Vocational Expert ("VE") Shirley Ripp also testified at the hearing. (AR. at 45-55.) ALJ Dawson issued a written decision denying Plaintiff's claim on July 3, 2019. (AR. at 92-101.) The Social Security Appeals Council upheld the ALJ's denial in a letter dated May 20, 2020 (AR. at 1-4), and Plaintiff sought judicial review on July 14, 2020. (Doc. 1.)

## II.     SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id*. If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

This Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but

less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

In the July 3, 2019 unfavorable decision, the ALJ found Plaintiff suffered severe, medically determinable impairments, but that he could perform medium work with occasional interaction with supervisors, coworkers, and the general public; the ability to understand, remember, and carry out simple instructions at the Specific Vocational Preparedness levels of 1 or 2; the ability to tolerate only occasional work setting changes; and the inability to work in fast-paced environments with production quotas. (AR. at 94-95, 97.) The ALJ rejected Plaintiff's "statements about the intensity, persistence, and limiting effects of his or her symptoms," and the opinions of his treating providers, Angela Herro, M.D., Steven Mortensen, M.D., and Michael Ham, M.D. (AR. at 98-99.) The ALJ also assigned "little weight" to the opinion of examining psychologist Brent Geary, Ph.D., "partial weight" to consultative examiner Hee Sun Choi, D.O., and "partial weight" to the statements of Plaintiff's friends and family members. (AR. at 99-100.) The ALJ concluded Plaintiff has no past relevant work, but that he could perform other jobs existing in significant numbers in the national economy at step five. (AR. at 100-101.)

## III. DISCUSSION

Plaintiff presents five issues on appeal: (1) whether the ALJ provided legally sufficient reasons for rejecting the opinion of examining psychologist Brent Geary, Ph.D., and whether the ALJ erred by concluding Plaintiff's Conversion Disorder, which Dr. Geary listed as a "rule-out" diagnosis, was not medically determinable (Pl. Br. at 7-11)[1]; (2) whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's symptom

---

[1] For clarity, the Court bifurcated the first issue below.

testimony (Pl. Br. at 12-13); (3) whether the ALJ provided legally sufficient reasons for rejecting lay witness statements (Pl. Br. at 13-15); (4) whether the ALJ erred by relying on VE testimony in response to hypothetical questions that did not fully encapsulate the impairments supported by the record (Pl. Br. at 15-16); and (5) whether remand for payment of benefits is appropriate. (Pl. Br. at 16-17.)

**A. The ALJ's mischaracterization of Plaintiff's Conversion Disorder diagnosis warrants remand.**

At step two of the sequential evaluation, the ALJ concluded Plaintiff suffered from the following severe impairments: headaches, degenerative disc disease, neurocognitive disorder due to a traumatic brain injury, adjustment disorder, major depressive disorder, and generalized anxiety disorder. (AR. at 94.) The ALJ found Plaintiff's other diagnoses including optic atrophy, dry eyes, hepatitis C, and elevated liver enzymes, were non-severe. (AR. at 94.) The ALJ stated Plaintiff's "alleged conversion disorder" was not medically determinable, as it had been "ruled out by at least one acceptable medical source."[2] (AR. at 95.) In support, the ALJ cited the report of Brent Geary, Ph.D., a psychologist who examined Plaintiff months before the hearing at his attorney's behest. (AR. at 95, 1111-23.) In Dr. Geary's May 2019 report, he included "Rule Out Functional Neurological Symptom Disorder (Conversion Disorder)" among his "Diagnostic Impressions." (AR. at 1119.) The ALJ reasoned that, because Dr. Geary had "ruled out" this diagnosis, "this alleged impairment is not medically determinable, and there is therefore no objective basis on the existing record to explain the claimant's alleged vision problems."[3] (AR. at 95.) The

---

[2] "A conversion disorder is one form of a [somatic symptom] disorder – a psychiatric syndrome where the patient's symptoms suggest medical disease, but no demonstrable pathology accounts for the [physical] symptoms. A conversion disorder is specifically characterized by a loss of, or change in, motor or sensory functioning resulting from psychological factors. The physical symptoms cannot be explained medically. Patients lack voluntary control of their symptoms." *Jacob M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-02000-MC, 2019 WL 2267303, at *2 (D. Or. May 28, 2019) (internal quotation marks omitted) (quoting *Herring v. Veterans Admin.*, 76 F.3d 386, 1996 WL 32147, at *1 n.1 (9th Cir. 1996) (unpublished)).

[3] Plaintiff alleges near total vision loss and extreme sensitivity to light resulting from an accident that occurred while he was attempting to repair a water heater near his alleged onset date. (AR. at 197-98, 449, 452-53.) Plaintiff sought specialized treatment for this condition throughout the relevant period, but providers repeatedly noted the lack of an

ALJ continued, "Without a medically determinable impairment, it is legally impossible to ascribe limitations to the alleged symptoms, i.e., vision loss, allegedly resulting from it." (AR. at 95, citations omitted.)

Plaintiff argues the ALJ misconstrued the meaning of Dr. Geary's "rule-out" Conversion Disorder diagnosis resulting in legal error. (Pl. Br. at 10.) Defendant appears to concede the ALJ misconstrued the terminology but that any misunderstanding by the ALJ amounted to harmless error because "there was no objective basis to support conversion disorder as a medically determinable impairment." (Def. Br. at 10). The Court finds that the ALJ erred and the error was harmful.

As Dr. Geary later clarified in a September 2019 addendum to his initial report,

> In medicine and psychology, the term "Rule out" means to eliminate or exclude something from consideration. So, as the above passage from my report clearly indicates, a medical basis for Mr. Metcalf's condition must "ruled out" [*sic*] (i.e., excluded) before a psychiatric diagnosis such as Conversion Disorder (Functional Neurological Symptom Disorder) can reasonably be rendered. "Rule out" does **NOT** mean or imply, as Judge Dawson seems to believe, that the diagnosis is eliminated, discounted or inappropriate. Rather, in abundance of caution, I left the Conversion Disorder diagnosis as a "Rule out" because it was unfitting for me to comment on the substantiation, or lack thereof, of medical opinion regarding Mr. Metcalf's disorder. As I wrote, there was insufficient evidence for the psychiatric diagnosis of Conversion Disorder because future findings might verify (or not) the medical underpinnings of the condition. I also believed that the other diagnoses I submitted in my report adequately and comprehensibly described the psychological factors in this case, including work-related limitations they reasonably impose."

[AR. at 16-17, emphasis in original.]

The Court recognizes Dr. Geary concluded "there was insufficient evidence for the psychiatric diagnosis of Conversion Disorder" at the time of his report. (AR. at 17.) Dr.

---

objective explanation for these symptoms and could not conclusively identify the cause. (AR. at 499, 861, 927, 932, 992, 1142.) At the hearing, Plaintiff's counsel indicated medical providers were still investigating the cause, but he did not identify objective medical evidence to explain Plaintiff's blindness. (AR. at 37-38.) Plaintiff's counsel cited the rule-out Conversion Disorder diagnosis as a possible explanation. (AR. at 36-38.) Despite the lack of objective findings, several of Plaintiff's treating physicians stated he was legally blind or that he met a visual Listing. (AR. at 503, 858-60, 1003.)

Geary believed that clinical diagnostic techniques could not satisfy the criteria for the condition at that point in time. (AR. at 17.) The Court also recognizes that federal regulations require the presence of "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" to establish a medically determinable impairment or "MDI." 20 C.F.R. § 416.921. More to the point, Social Security "will not use your statement of symptoms, *a diagnosis*, or a medical opinion to establish the existence of an impairment(s)." *Id.* (emphasis added).

On the other hand, the nature of this impairment presents unusual challenges. Conversion Disorder, or Functional Neurological Symptom Disorder, is characterized, in part, by the *lack* of objective evidence to substantiate physical, medical phenomena. *E.g.*, *Todt v. Saul*, No. 1:18-CV-237 PLC, 2020 WL 1853225, at *6 (E.D. Mo. Apr. 10, 2020); *Yousef v. Saul*, No. 7:18-CV-92-FL, 2019 WL 5816654, at *8 (E.D.N.C. July 22, 2019), report and recommendation adopted, No. 7:18-CV-92-FL, 2019 WL 3820489 (E.D.N.C. Aug. 14, 2019) ("The court explained that the lack of objective evidence was 'unremarkable' because 'the physical symptoms in a conversion disorder admittedly are not confirmed by objective medical evidence and cannot be fully explained by a general medical condition . . . .'") (citations omitted); *but see Holloway v. Berryhill*, 714 F. App'x 772 (9th Cir. 2018) (unpublished) ("The ALJ properly excluded conversion disorder or psychogenic dystonia. No 'medically acceptable clinical and laboratory diagnostic techniques' resulted in a finding or diagnosis of this impairment.") (citing *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005)). For this reason, the Court cannot easily accept Defendant's position there is "no objective basis to support conversion disorder as a medically determinable impairment." (Def. Br. at 10.) Other providers also mentioned a tentative diagnosis of Conversion Disorder or "hysterical blindness" as a possibility (AR. at 524, 738, 930), and the fact a diagnosis of an impairment is a "rule-out" diagnosis does not foreclose the possibility that impairment is medically determinable or even severe.[4]

---

[4] *E.g.*, *Richardson v. Colvin*, No. 2:15-CV-07779 (VEB), 2016 WL 4487823, at *3 (C.D. Cal. Aug. 25, 2016), judgment entered, No. 2:15-CV-07779 (VEB), 2016 WL 4493868

- 6 -

The ALJ misinterpreted Dr. Geary's report and substantial evidence does not support the conclusion Conversion Disorder was excluded, as the ALJ claimed. The Court finds this error is not harmless.

Harmless error is an error "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's sole basis for rejecting the Conversion Disorder diagnosis was the mistaken belief it had been excluded. Had the ALJ correctly understood Dr. Geary's meaning, the ALJ would still need to provide an explanation regarding (1) why Conversion Disorder is not medically determinable, 20 C.F.R. § 416.921; (2) if it was medically determinable, whether it was severe, 20 C.F.R. § 416.920(a)(4)(ii); and (3) whether it was severe or not, to what extent it impacted Plaintiff's RFC. *E.g.*, 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.") Consequently, the Court cannot find the ALJ's erroneous interpretation of Dr. Geary's report was "inconsequential" to the disability determination. *Stout*, 454 F.3d at 1055. Upon remand, the ALJ could simply explain in greater detail his conclusion this impairment was not medically determinable, but the Court will not substitute its interpretation of the record for that of the ALJ. *See Thomas*, 278 F.3d at 954; *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). As it stands, the ALJ provided only one incorrect reason for finding this impairment is not medically determinable. (AR. at 95.) Consequently, the Court will remand for further proceedings.

. . . .

. . . .

---

(C.D. Cal. Aug. 25, 2016) (noting a rule-out anti-social personality was found severe at step two); *Fisher v. Colvin*, No. 12-CV-3115-FVS, 2014 WL 1159304 (E.D. Wash. Mar. 21, 2014) (noting the ALJ found a rule-out cognitive disorder severe at step two).

**B.    The ALJ otherwise provided specific, legitimate reasons for rejecting Dr. Geary's assessment of Plaintiff's functional limitations.**

If a treating or examining physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the opinion without setting forth specific and legitimate reasons supported by substantial evidence in the record.[5] *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The ALJ assigned "little weight" to Dr. Geary's report, stating it was "completely out of line with Dr. Geary's own functional testing of the [Plaintiff], and inconsistent with normal mental status findings found above." (AR. at 99.) Plaintiff contends "[t]he ALJ did not adequately explain which aspects of Dr. Geary's testing were allegedly inconsistent with which aspects of Dr. Geary's conclusions regarding Metcalf's functional limitations." (Pl. Br. at 11.) The Court finds the ALJ provided specific, legitimate reasons for rejecting Dr. Geary's functional assessment.

Dr. Geary documented Plaintiff's Verbal Comprehension Index score was "in the lower half of the borderline range"; his Working Memory Index "is at the bottom of the low average range"; and his subtest scores fell within the low-average-to-borderline ranges. (AR. at 1119.) Plaintiff's Auditory Memory Index scores fell "near the bottom of the low average range"; his "Immediate Memory subtests, . . . are in the average and low average ranges, respectively[]"; "Delayed Memory subtests . . . are in the borderline range[]"; and "Logical Memory Recognition" and "Verbal Paired Associates Recognition" scores were within normal limits. (AR. at 1119.) Despite psychometric scores falling predominately within the low-average ranges, Dr. Geary assigned significant levels of impairment across

---

[5] Plaintiff's counsel retained Dr. Geary for the purposes of a Social Security disability evaluation. (AR. at 1112-13.) Defendant correctly notes that, since Plaintiff's relationship with Dr. Geary did not arise out of medical need, Dr. Geary is not properly considered a treating source under the regulations applicable to this claim. 20 C.F.R. 416.927(a)(2). Nevertheless, an ALJ must still cite specific, legitimate reasons when rejecting the disputed opinion of an examining physician. *Andrews*, 53 F.3d at 1043. Plaintiff argues that Dr. Geary's opinion is uncontradicted in the record (Reply at 2-3), but the Court disagrees. Several consultants and examiners opined Plaintiff has no severe impairment at all, whereas Dr. Geary assigned limitations inconsistent with gainful employment. (AR. at 85-86, 755.) These opinions are at odds, notwithstanding the fact the ALJ implicitly rejected the conclusion Plaintiff has no severe impairments.

most functional areas, including severe limitations in Plaintiff's ability to complete a normal workday or workweek and perform activities within a schedule. (AR. at 1121-22.) The Court deems the ALJ's reasoning adequate. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (noting discrepancies between a doctor's contemporaneous treatment notes and his functional assessment constitute a clear, convincing reason for rejecting the doctor's opinion); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to . . . draw [relevant] inferences . . . , if those inferences are there to be drawn.") Dr. Geary did not explain his assessment any further in his addendum statement to the Appeals Council.[6] (AR. at 17.)

The ALJ also referenced normal mental status findings in his decision to reject Dr. Geary's opinion.[7] (AR. at 99.) These normal findings included intact immediate, recent, and remote memory (AR. at 799); cogent thought processes (AR. at 752); alertness and orientation to person, place, and time (AR. at 752, 792, 795); normal mood and affect (AR. at 792, 795, 799); cooperative behavior (AR. at 752); normal attention span and concentration (AR. at 799); and normal speech. (AR. at 799.) The Court recognizes Plaintiff exhibited clinically significant mental status findings on another occasion (AR. at 1088), but considering the record as a whole, the ALJ's reasoning meets the standard for specific, legitimate reasons. Consequently, the ALJ did not err.

---

[6] Replying to the ALJ's conclusion Dr. Geary's functional assessment was "completely out of line" with his functional testing, Dr. Geary stated, "It would be exceedingly difficult to find any authority in the mental health field who would read my report and the records upon which it is based to reach the conclusion of the judge that my opinions were 'out of line' with my 'own functional testing[,]'" and, after citing his own lengthy experience in these matters, "I do know what functional limitations are . . . ." (AR. at 17.) Dr. Geary did not attempt to reconcile his conclusions with his examination findings and testing results.

[7] Earlier in the decision, the ALJ cited normal mental status findings supporting his application of the psychiatric review technique at step three. (AR. at 96-97.) He later referenced "normal mental status findings found above" in his decision to reject Dr. Geary's opinion, but cited directly to Dr. Geary's own report at 74F. (AR. at 99.) Dr. Geary noted Plaintiff was "fully oriented" with intact comparative thinking and satisfactory concentration. (AR. at 1115.) Dr. Geary noted Plaintiff misspelled a word and recollected two out of three words after a brief delay. (AR. at 1115.)

### C. The ALJ provided legally sufficient reasons for rejecting Plaintiff's symptom testimony.

Absent evidence of malingering, an ALJ must cite "specific, clear and convincing reasons" for rejecting a claimant's symptom testimony.[8] *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citations omitted). The ALJ may also consider that the medical record lacks evidence to support certain symptom testimony but cannot reject a claimant's testimony for that reason alone. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). The ALJ may reject symptom testimony by utilizing "ordinary techniques of credibility evaluation" such as considering inconsistencies between a claimant's testimony and prior statements. *Burch*, 400 F.3d at 680. Evidence of conservative treatment is another legally sufficient basis. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citations omitted).

Here, the ALJ found Plaintiff's statements concerning the "intensity, persistence, and limiting effects of his or her symptoms[ ]are inconsistent with the mental and medical evidence." (AR. at 98.) The ALJ noted Plaintiff routinely used Tylenol and ice packs for headaches, "which helped," and that Imitrex and Fioricet also helped mitigate Plaintiff's headache symptoms. (AR. at 98.) The ALJ noted Plaintiff declined injection therapy during the relevant period. (AR. at 98.) The ALJ asserted Plaintiff denied suicidal ideation, that he had no inpatient psychiatric hospitalizations, and that he was not taking mental health medication, although one of his medications may serve as an anti-depressant. (AR. at 98.)

The ALJ cited clear, convincing reasons for rejecting Plaintiff's symptom testimony. While the ALJ cited some reasons that are belied by the record,[9] the ALJ also

---

[8] It must first be established whether the claimant presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). This is not at issue with respect to those impairments the ALJ deemed medically determinable severe. (AR. at 94.)

[9] The ALJ stated Plaintiff "often denied" suicidal ideation to his treatment providers (AR. at 98), but in the lone psychiatric visit the ALJ cited in support, Plaintiff reported "he 'doesn't want to live'" if he was not awarded disability benefits at his hearing. (AR. at 1179.) Plaintiff reported suicidal ideation to his mental health treatment providers on other occasions. (AR. at 1078, 1181.)

cited valid reasons, including Plaintiff's failure to pursue more aggressive treatment modalities, such as injections for pain.[10] (AR. at 98.) The ALJ stated Plaintiff had not attempted injections or steroid-based therapies during the relevant period for back pain. (AR. at 98.) Dr. Herro-Kovacik administered Botox in July 2018 for Plaintiff's complaints of photophobia (AR. at 1010, 1013), but Plaintiff declined additional injections to treat his migraines (AR. at 532, 1027), despite consistent reports of severe headaches (AR. at 531, 615, 629, 639, 935, 1031, 1051) which he described as his "primary issue" in a March 2017 visit with his treating pain management provider. (AR. at 531.)

Regarding Plaintiff's failure to take psychiatric medications, he testified that one of his medications, to his understanding, is "a type of antidepressant, but it's supposed to help with a couple of different things . . . ." (AR. at 40.) Plaintiff further testified, however, that his behavioral treatment provider did not prescribe medications for his various mental health symptoms. (AR. at 40.) Plaintiff's prescribed medications list reflects Dr. Herro-Kovacik prescribed Sertraline "primarily to help control issues with eye and head pain[,]" but that it was "prescribed for issues with Depression" as well. (AR. at 365.) The Court finds Plaintiff's failure to seek specialized mental health treatment in the form of psychiatric medication is a legally sufficient reason and is supported here, given Plaintiff's longstanding complaints of mental health symptoms.[11] *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the unexplained failure to seek treatment may constitute evidence sufficient to reject a claimant's symptom testimony). Plaintiff testified mental health treatment "was a recommendation actually by a few different doctors over the course of time . . ." (AR. at 38), but as of the date of his hearing, he was not taking medications prescribed from a psychiatric provider for the purpose of addressing his mental health

---

[10] If the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

[11] When Plaintiff initiated psychiatric treatment in December 2018, he reported his depression began after the water heater accident giving rise to his disability claim. (AR. at 1078.)

complaints.[12] Given the record of Plaintiff's mental health complaints, the ALJ's reasoning is clear and convincing. Consequently, the ALJ did not err.

### D. The ALJ failed to provide legally sufficient reasons for rejecting lay witness statements, but this error is harmless.

The ALJ assigned "partial weight" to the third-party statements of Plaintiff's friends and family (AR. at 99), stating that while their "observations of the [Plaintiff's] every-day behavior are entitled to some consideration due to the extensive relationship between the [Plaintiff] and them, the conclusions about what the [Plaintiff] is medically capable of based on those observations are not." (AR. at 99.) The ALJ cited the third-parties' collective lack of medical training and experience in those matters in determining Plaintiff's actual functional abilities and their lack of "formalized medical or psychological testing of the claimant . . . ." (AR. at 99-100.) To reject these statements, the ALJ must provide reasons germane to each witness. *Rounds v. Commissioner*, 807 F.3d 996, 1007 (9th Cir.2015).

The ALJ's reasoning for rejecting the third-party statements is remarkably similar to the reasoning cited and rejected by the Ninth Circuit in *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). There, the Court held that, even when an ALJ finds a third-party credible to report observations of the claimant's activities, "the ALJ should not have discredited [the third-party] testimony on the basis of its relevance or irrelevance to medical conclusions."[13] *Id*. Importantly, however, such error is harmless where the statement of a third party does not describe limitations in excess of what Plaintiff described, and where the ALJ properly rejected Plaintiff's symptom testimony citing clear, convincing reasons

---

[12] Plaintiff's mental health treatment records indicate difficulties with treatment at Southwest Behavioral Health, so he requested a transfer to a new provider. (AR. at 1182.) Plaintiff testified as of the date of his hearing his transfer to a new provider "has gone no place." (AR. at 45.)

[13] Courts of this Circuit cite *Bruce* for the proposition lay witness testimony should not be rejected due to the witness's lack of medical expertise. *E.g.*, *McCutcheon v. Astrue*, 378 F. App'x 649, 651 (9th Cir. 2010) (unpublished) (citing *Bruce*); *Anderson v. Colvin*, No. CV 13-336-TUC-CRP, 2014 WL 4904868, at *9 (D. Ariz. Sept. 30, 2014) (citing *Bruce*); *see also*, *Singleton v. Colvin*, 646 F. App'x 509, 511 (9th Cir. 2016) (unpublished) (the ALJ erred by rejecting lay witness testimony due to a lack of medical training which "of course will always be true of lay testimony.")

supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) *superseded on other grounds* by 20 C.F.R. § 404.1502(a).

Plaintiff submitted the statements of his father and four family friends. Each party explained with varying degrees of specificity that Plaintiff often appears unkempt or unclean (AR. at 378, 412, 419, 427, 434), that he sleeps most of the day (AR. at 419-20, 427), and that his blindness has affected all daily activities (AR. at 381, 415, 422, 430, 437). At Plaintiff's hearing, he testified to dressing in mismatched clothing due to his inability to see (AR. at 30-31), that he sleeps or lays in bed as much as 20-24 hours in a day, (AR. at 41), that he needs assistance with maintaining hygiene (AR. at 31), that he is only sometimes capable of making a simple meal, such as a sandwich (AR. at 28), and that his alleged lack of vision precludes him from doing most anything except lay in bed in his spare time. (AR. at 31.) The third-party statements, collectively and individually, replicate Plaintiff's testimony that he is capable of only limited activities with assistance and that he spends most of his time, if not entire days, in his bed. As noted above, the ALJ provided clear and convincing reasons for rejecting Plaintiff's symptom testimony, including his failure to pursue more aggressive treatment for complaints of debilitating headaches and mental health complaints. The Court finds these third parties described limitations commensurate with the Plaintiff's testimony. Consequently, this Court finds any error with respect to the third-party statements to be harmless.

**E.     The ALJ did not err by relying on the VE testimony in question.**

Plaintiff argues the ALJ's finding that he could perform other work at step five was not supported by substantial evidence because it did not include all the properly supported restrictions and limitations from the record. (Pl. Br. at 15-16.) Plaintiff does not explain which specific limitations were omitted from the hypotheticals to the VE, and which were properly supported. (Pl. Br. at 15, Reply at 9.) The ALJ need only pose hypotheticals to the VE based on limitations properly supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir.2001). Considering the unresolved issue regarding Plaintiff's Conversion Disorder, however, the Court will remand for further

1 proceedings which will present an additional opportunity for Plaintiff and the
2 Commissioner to formulate RFC hypotheticals based upon the limitations properly
3 supported by the record.

**F.     Remand for further proceedings.**

The Court finds that further proceedings are useful in the present case because conflicts and ambiguities in the record must be resolved. *Treichler*, 775 F.3d at 1099–1102. Even if the credit-as-true elements were satisfied, the Court would exercise its discretion not to remand for payment here given there are "serious doubts" concerning Plaintiff's disability. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

**IT IS THEREFORE ORDERED** reversing the July 3, 2019 decision of the Commissioner of Social Security (AR. at 92-101) and remanding this matter for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

Dated this 22nd day of March, 2022.

Honorable John J. Tuchi
United States District Judge